IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Christine M. Arguello

Civil Action No. 17-cv-02297-CMA-NRN

ROSEMARY STRASSELL,

    Plaintiff,

v.

DERRICK M. NORRIS,

    Defendant.

---

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

---

This matter is before the Court on Defendant Arapahoe County Deputy Sheriff Derrick Norris' ("Deputy Norris") Motion for Summary Judgment. (Doc. # 51.) Plaintiff Rosemary Strassell ("Plaintiff") filed a Response on December 17, 2019 (Doc. # 59), and Deputy Norris filed a Reply on December 31, 2019 (Doc. # 60). For the following reasons, because Deputy Norris is entitled to qualified immunity, the Motion for Summary Judgment is granted.

## I.    BACKGROUND

### A.    FACTUAL BACKGROUND

The following material facts are undisputed. On the evening of September 24, 2015, Deputy Norris initiated a traffic stop of Plaintiff in Byers, Colorado. (Doc. # 26 at 3, ¶ 11; Doc. # 51 at 2.) Plaintiff and Deputy Norris were familiar with one another because Deputy Norris had previously assisted her with service calls and an assault claim that

she brought against a former roommate. (Doc. # 51-1 at 27, ¶ 2; Doc. # 59-2 at 41–44.) Deputy Norris initiated the traffic stop because Plaintiff's vehicle had a cracked windshield. (Doc. # 26 at 3, ¶ 12; Doc. # 51 at 2.) During that stop, Deputy Norris observed in Plaintiff's vehicle what he believed could be drugs and drug paraphernalia; specifically, he noted a bag containing a green, leafy substance and an unlabeled prescription pill bottle. (Doc. # 51-1 at 28, ¶ 3, 36.) Plaintiff denied that the vehicle contained any illegal drugs. (*Id.*)

Deputy Norris then asked Plaintiff for permission to search the vehicle, and she consented. (Doc. # 51-1 at 28, ¶ 3; Doc. # 59-2 at 61.) At Deputy Norris' request, Plaintiff exited the vehicle with her purse so that Deputy Norris could conduct the search. (Doc. # 51-1 at 28, ¶ 4, 31, ¶ 3, 37; Doc. # 59-2 at 63.) Deputy Norris then asked Plaintiff for permission to search her purse, to which she consented. (*Id.* at 14, 28 ¶ 4.) During that search, Deputy Norris discovered a methamphetamine pipe to which Plaintiff stated belonged to her partner, Shawn Pontious. (*Id.* at 12, 28, ¶ 4.) He also found a used syringe with brown residue, which he suspected was heroin paraphernalia, and five prescription bottles in Plaintiff's purse. (*Id.* at 28, ¶ 4, 37.) One of these bottles was unlabeled and contained a small, discolored rock, weighing approximately 0.1 grams. (*Id.*) Deputy Norris conducted Narcotics Identification Kit tests on the discolored rock and the used syringe, and the discolored rock tested positive for cocaine. (*Id.*) Deputy Norris then arrested Plaintiff. (*Id.* at 17, 28, ¶ 5, 37.)

To effectuate the arrest, Deputy Norris grabbed Plaintiff by the bicep, spun her around, and placed her hands in handcuffs behind her back. (Doc. # 51 at 4, ¶ 13; Doc.

# 51-1 at 17–18.) Plaintiff told Deputy Norris that the handcuffs felt too tight on her wrists and caused pain. (Doc. # 51 at 4–5; Doc. # 51-1 at 19.) In accordance with his training and practice as a deputy sheriff, Deputy Norris tested the tightness by placing his finger in between the cuff and her wrist. (*Id.*) He determined that the handcuffs were not too tight because there was sufficient room for his finger to fit between the cuff and her wrist. (*Id.*) The handcuffing left "little indentions in [Plaintiff's] wrists[.]" (Doc. # 51-1 at 18–19.) Deputy Norris assisted Plaintiff into his patrol vehicle and drove her to the Arapahoe County Detention Facility ("ACDF"). (Doc. # 51-1 at 22–23, 29, ¶ 9, 37.) ACDF officers booked Plaintiff on charges for unlawful possession of a controlled substance, possession of drug paraphernalia, and obstruction of view through required glass. (*Id.* at 37.) All charges were later dismissed. (Doc. # 26 at 3, ¶ 18.)

From September 25, 2015 until September 29, 2015, Plaintiff was detained at ACDF. (Doc. # 51-1 at 2–4; Doc. # 52 at 1.) During her detention, Plaintiff filed multiple medical requests, none of which referenced shoulder pain. (Doc. # 52 at 11–13.) Plaintiff then received medical care but did not report any shoulder pain to the medical staff. (Doc. # 51-1 at 2–3; Doc. # 52 at 1.) The ACDF released Plaintiff from its custody on September 29, 2015. (Doc. # 51-1 at 4.)

Six weeks after Plaintiff's arrest, on November 7, 2015, she visited the Medical Center of Aurora emergency room for shoulder pain. (Doc. # 51-1 at 4–5; Doc. # 52 at 14–20.) At the emergency room, Plaintiff reported that her shoulder pain began three days prior to her emergency room visit. (Doc. # 52 at 14.)

## B. PROCEDURAL HISTORY

Plaintiff filed the operative Amended Complaint on October 4, 2018. (Doc. # 26 at 8.) There, Plaintiff raised one claim for relief under 42 U.S.C. § 1983, alleging Deputy Norris violated her Fourth and Fourteenth Amendment rights through the use of excessive force to facilitate her arrest. (*Id.* at 6, ¶¶ 23–27.) She alleges that Deputy Norris' use of handcuffs and arrest force were objectively unreasonable, intentionally malicious, and shocked the conscience such that Deputy Norris willfully and recklessly ignored Plaintiff's constitutional rights. (*Id.* at 5–6.)

On November 13, 2019, Deputy Norris filed his Motion for Summary Judgment (Doc. # 51) arguing that he is entitled to qualified immunity because he employed an amount of arrest force that is permissible under Supreme Court and Tenth Circuit precedent, and as a result, his conduct did not violate Plaintiff's constitutional rights. (Doc. # 51 at 8–15.) On December 17, 2019, Plaintiff responded and contends that questions of fact exist as to whether Deputy Norris used excessive force where the circumstances of the arrest provide that Plaintiff repeatedly complained that the handcuffs were too tight or caused pain, that Deputy Norris ignored those complaints, and Plaintiff was injured. (Doc. # 59 at 3, 8–9.) Deputy Norris replied on December 31, 2019 (Doc. # 60) and avers that there is no dispute of material fact that Deputy Norris neither ignored Plaintiff's complaints about handcuff tightness nor caused more than a *de minimis* injury. (*Id.* at 4–8.)

## II. LEGAL STANDARDS

### A. SUMMARY JUDGMENT STANDARD

Summary judgment is warranted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it is essential to the proper disposition of the claim under the relevant substantive law. *Wright v. Abbott Labs., Inc.*, 259 F.3d 1226, 1231–32 (10th Cir. 2001). A dispute is "genuine" if the evidence is such that it might lead a reasonable jury to return a verdict for the non-moving party. *Allen v. Muskogee*, 119 F.3d 837, 839 (10th Cir. 1997). When reviewing motions for summary judgment, a court must view the evidence in the light most favorable to the non-moving party. *Id.* However, conclusory statements based merely on conjecture, speculation, or subjective belief do not constitute competent summary judgment evidence. *Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 875 (10th Cir. 2004).

The moving party bears the initial burden of demonstrating the absence of a genuine dispute of material fact and entitlement to judgment as a matter of law. *Id.* In attempting to meet this standard, a movant who does not bear the ultimate burden of persuasion at trial does not need to disprove the other party's claim; rather, the movant need simply point out to the court a lack of evidence for the other party on an essential element of that party's claim. *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 671 (10th Cir. 1998) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)).

Once the movant has met its initial burden, the burden then shifts to the non-moving party to "set forth specific facts showing that there is a genuine issue for trial."

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). The non-moving party may not simply rest upon its pleadings to satisfy its burden. *Id.* Rather, the non-moving party must "set forth specific facts that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant." *Adler*, 144 F.3d at 671. Stated differently, the party must provide "significantly probative evidence" that would support a verdict in their favor. *Jaramillo v. Adams Cty. Sch. Dist. 14*, 680 F.3d 1267, 1269 (10th Cir. 2012). "To accomplish this, the facts must be identified by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein." *Id.*

**B.    QUALIFIED IMMUNITY STANDARD**

The doctrine of qualified immunity "protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (internal quotation and citation omitted). To defeat a claim of qualified immunity, a plaintiff must show: "(1) that the defendant's conduct violated a constitutional or statutory right, and (2) that the law governing the conduct was clearly established at the time of the alleged violation." *Eaton v. Meneley*, 379 F.3d 949, 954 (10th Cir. 2004). The court is not required to address these inquiries in any specific order, *Pearson*, 555 U.S. at 236–37, and if a plaintiff fails to carry either part of the two-part burden, the defendant is entitled to qualified immunity, *Medina v. Cram*, 252 F.3d 1124, 1128 (10th Cir. 2001).

To determine whether an officer's conduct violated a constitutional right, courts determine the reasonableness of the conduct and consider "the facts and

6

circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether [the suspect] is actively resisting arrest or attempting to evade arrest by flight." *Graham v. Connor*, 490 U.S. 386, 396 (1989).

As to the second prong of the qualified immunity analysis, "[a] clearly established right is one that is 'sufficiently clear that every reasonable officer would have understood that what he is doing violates that right.'" *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015) (quoting *Reichle v. Howards*, 566 U.S. 658, 664 (2012)). "'[C]learly established law' should not be defined 'at a high level of generality,'" but rather it "must be 'particularized' to the facts of the case." *White v. Pauly*, 137 S. Ct. 548, 552 (2017) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 742 (2011); *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). "Although plaintiffs can overcome a qualified-immunity defense without a favorable case directly on point, 'existing precedent must have placed the statutory or constitutional question beyond debate.'" *Aldaba v. Pickens*, 844 F.3d 870, 877 (10th Cir. 2016) (quoting *Mullenix*, 136 S. Ct. at 308). "In the Fourth Amendment context, 'the result depends very much on the facts of each case,' and the precedent must 'squarely govern' the present case." *Id.* at 877 (quoting *Mullenix*, 136 S. Ct. at 309).

### III. DISCUSSION

In the instant case, Plaintiff asserts one claim for excessive force, but relies on two manners of force employed by Deputy Norris in support of her claim: (1) handcuffing, and (2) the force used to effectuate her arrest. Deputy Norris argues that he is entitled to qualified immunity, because Plaintiff can neither establish that he

7

violated her constitutional rights during the arrest nor that his conduct violated a clearly established law at the time of her arrest. The Court finds that neither Deputy Norris' handcuff force nor arrest force amounted to a constitutional violation, and as a result, Deputy Norris is entitled to qualified immunity.

A.  **QUALIFIED IMMUNITY FOR HANDCUFF CLAIM**

   1.  Relevant Law

In a handcuff force claim, to establish that an officer's conduct violated the plaintiff's constitutional rights, the plaintiff must demonstrate that (1) the officer used handcuff force exceeding what was reasonable to effectuate a lawful arrest, and (2) the handcuff force caused more than a *de minimis* injury. *Cortez v. McCauley*, 478 F.3d 1108, 1128 (10th Cir. 2007).

As a general matter, the Tenth Circuit has "confidently conclude[d] . . . that, in the ordinary course, handcuffing any arrestee—absent some injury specifically caused by the application of the cuffs—is lawful." *A.M. v. Holmes*, 830 F.3d 1123, 1151–52 (10th Cir. 2016). Further, a plaintiff must show "an actual, non-de minimis physical, emotional, or dignitary injury . . . because '[h]andcuffing claims, in essence, concern the manner or course in which a petitioner is handcuffed' and '[b]ecause handcuffing itself is not necessarily an excessive use of force in connection with an arrest.'" *Id.* at 1152 (quoting *Fisher v. City of Las Cruces*, 584 F.3d 888, 897 (10th Cir. 2009)). "[M]inor, temporary injuries[,] like pain, numbness, or swelling" are *de minimis* injuries in handcuff-related excessive-force cases." *Scott v. City of Albuquerque*, 711 F. App'x 871, 874, 881 (10th Cir. 2017) (unpublished). The weight of Tenth Circuit authority is replete with examples

8

of *de minimis* injuries. *Koch v. City of Del City*, 660 F.3d 1228, 1247–48 (10th Cir. 2011) (holding that excessive force claim failed because plaintiff's injury was *de minimis* where "some sores on her wrists and arms" from the handcuffing "appear[ed] to be just superficial abrasions"); *Cortez v. McCauley*, 478 F.3d 1108, 1129 (10th Cir. 2007) (holding that excessive force claim failed because "red marks that were visible for days afterwards" and "indentions" caused by handcuffing were *de minimis* injuries); *Silvan W. v. Briggs*, 309 F. App'x 216, 224–25 (10th Cir. 2009) (unpublished) (holding that excessive force claim failed "chaffing and soreness of wrists" caused by handcuffing were *de minimis* injuries); *Scott*, 711 F. App'x at 881 (holding that excessive force claim failed because week-long bruised and swollen wrists resulting from an officer's use of handcuffs were *de minimis* injuries). Failure to satisfy the "non-de minimis-injury standard" is determinative of whether a plaintiff's excessive-force claim fails. *Scott*, 711 F. App'x at 880.

    2.    <u>Application</u>

Plaintiff argues that Deputy Norris' use of handcuffs constitutes an unnecessary and unreasonable amount of force given that, at the time of the arrest, she was fifty-seven years old, had an extensive medical history, she did not resist the arrest, and that his use of handcuffs caused temporary wrist pain and skin indentations. (Doc. # 26 at 1, ¶ 3, 4, ¶ 19.B; Doc. # 51-1 at 2, 18–19.) Deputy Norris responds that, because his

handcuff force did not cause more than a *de minimis* injury, his conduct did not violate her constitutional rights. (Doc. # 51 at 12.) The Court agrees with Deputy Norris.

The undisputed facts establish that the amount of force with which Deputy Norris used to handcuff Plaintiff was objectively reasonable under the circumstances. Despite instigating the traffic stop in response to a cracked windshield (Doc. # 26 at 3, ¶ 12; Doc. # 51 at 2, ¶ 1), Deputy Norris arrested Plaintiff after discovering what he believed were illegal drugs and drug paraphernalia in her possession. (Doc. # 51-1 at 17, 28, ¶¶ 4–5, 37.) Thus, Deputy Norris had probable cause to believe that she committed a felony crime that warranted her arrest. (Doc. # 51 at 9; Doc. # 51-1 at 28, ¶¶ 3–5.)

Furthermore, contrary to Plaintiff's assertion that Deputy Norris ignored her complaints of handcuff tightness, (Doc. # 59 at 8), the record depicts that when she initially complained, Deputy Norris performed a tightness check pursuant to his protocol and determined that the handcuffs were not too tight because he could fit his finger between the handcuffs and her wrist. (Doc. # 51-1 at 19, 28, ¶ 14, 37.) Thus, because Deputy Norris maintains the "right to use handcuffs when conducting an otherwise legally proper arrest," *Holmes*, 830 F.3d at 1155, the totality of the circumstances show that his use of handcuffs was reasonable.

Additionally, Plaintiff fails to proffer admissible facts in support of her contention that Deputy Norris' arrest force caused more than a *de minimis* injury to Plaintiff. In the instant case, Plaintiff's injuries of "little indentions in [her] wrists" are insufficient to establish that she suffered more than a *de minimis* injury under prevailing Tenth Circuit precedent. (Doc. # 51-1 at 18–19); *see, e.g., Koch*, 660 F.3d at 1247–48 (concluding

that "some sores on [plaintiff's] wrists and arms" were *de minimis* injuries); *Cortez*, 478 F.3d at 1129 (concluding that "red marks that were visible for days afterwards" and "indentions" were *de minimis* injuries); *Silvan W.*, 309 F. App'x at 224–25 (concluding that "chaffing and soreness of wrists" were *de minimis* injuries); *Scott*, 711 F. App'x at 881 (concluding that week-long bruised and swollen wrists were *de minimis* injuries). And Plaintiff's failure to establish that her injury was more than *de minimis* causes her handcuff force claim to fail. *See Scott*, 711 F. App'x at 880.

Moreover, although Plaintiff insinuates that there is also a causal connection between Deputy Norris' handcuffing and her shoulder injury (Doc. # 59 at 8), she offers no evidence to substantiate that speculation. Instead, Deputy Norris furnishes evidence illustrating that no such causal connection exists. (Doc. # 59-2 at 73–74; Doc. # 52 at 1, 11–13; Doc. # 51-1 at 2–3.) During her arrest, she did not mention any shoulder pain to Deputy Norris. (Doc. # 59-2 at 73–74.) In addition, subsequent to her arrest, Plaintiff failed to file any complaints about shoulder pain during her detainment at ACDF from September 24, 2015 to September 29, 2015. (Doc. # 51-1 at 2–4, 39–40; Doc. # 52 at 2–13.) In fact, she filed multiple medical kites during her detainment at ACDF, none of which concerned shoulder pain (Doc. # 52 at 11–13); and ACDF medical records likewise reflect no disclosures of shoulder pain. (Doc. # 51-1 at 2–3; Doc. # 52 at 1.) It was not until six weeks after Plaintiff's arrest that she visited an emergency room at Medical Center of Aurora for shoulder pain. (Doc. # 51-1 at 4–5; Doc. # 52 at 14–20.) Yet, at that November 7, 2015 emergency room visit, she reported that the shoulder pain arose three days before her visit. (Doc. # 52 at 14.) Thus, it is clear that there is no

dispute of material fact that Deputy Norris' handcuffing Plaintiff caused only a *de minimis* injury.

In the face of medical records that vitiate the postulation that Deputy Norris' handcuffing caused Plaintiff's shoulder injury, she cannot rely on her pleadings or arguments to carry her burden at summary judgment and excuse her failure to set forth "specific facts that would be admissible in evidence" showing that she suffered more than a *de minimis* injury. *Anderson*, 477 U.S. at 256; *Adler*, 144 F.3d at 671. Given the dearth of evidence showing any connection between Deputy Norris' handcuffing and an actual injury, Plaintiff's *de minimis* injury alone cannot spawn a constitutional violation. *See Cortez*, 478 F.3d at 1129; *Scott*, 711 F. App'x at 880.

Accordingly, because Deputy Norris' use of handcuffs did not violate Plaintiff's constitutional rights, he is entitled to qualified immunity as to Plaintiff's handcuff force claim.[1]

**B.    QUALIFIED IMMUNITY FOR ARREST FORCE CLAIM**

1.    Relevant Law

"Under well-settled Supreme Court precedent, a law-enforcement officer's 'right to make an arrest . . . necessarily carries with it the right to use some degree of physical coercion . . . to effect it." *A.M.*, 830 F.3d at 1151 (quoting *Graham*, 490 U.S. at 396). Excessive force claims are evaluated "under an objective-reasonableness standard, using the perspective of a reasonable officer on the scene." *Graham*, 490 U.S. at 396.

---

[1] Because Plaintiff cannot show that her constitutional right has been violated, the Court need not reach the "clearly established" prong of qualified immunity. *See Koch*, 660 F.3d at 1248.

As to excessive force claims involving an arrest, the "excessive force inquiry evaluates the force used in a given arrest or detention against the force reasonably necessary to effect a lawful arrest or detention under the circumstances of the case." *Cortez*, 478 F.3d at 1126. However, this reasonable inquiry excludes any consideration of an officer's "underlying intent or motivation." *Graham*, 490 U.S. at 397.

Under Supreme Court and Tenth Circuit precedent, a small amount of force, including the grabbing of a plaintiff and placing him or her into the patrol car, "is permissible in effecting an arrest under the Fourth Amendment." *Cortez*, 478 F.3d at 1128 (holding that officers' "hauling" plaintiff into patrol car in the middle of the night without any explanation during investigation of serious felony did not rise to unconstitutional excessive force) (citing *Atwater v. City of Lago Vista*, 532 U.S. 318, 354–55 (2001) (officer's conduct was constitutionally permissible under the Fourth Amendment where officer handcuffed, placed in a patrol car, and drove plaintiff to police station to effectuate plaintiff's arrest for driving without her "seatbelt fastened, failing to secure her children in seatbelts, driving without a license, and failing to provide proof of insurance")). The Fourth Amendment "does not require [police] to use the least intrusive means in the course of a detention, only reasonable ones." *Fisher v. City of Las Cruces*, 584 F.3d 888, 894 (10th Cir. 2009). Indeed, "[n]ot every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment." *Id.* (quoting *Graham*, 490 U.S. at 396). Although an arrest is inherently inconvenient and embarrassing, an arrest is constitutionally permissible where it is

neither extraordinary nor unusually harmful to a plaintiff's physical interests. *See Atwater*, 532 U.S. at 324.

2. Application

In his Motion for Summary Judgment, Deputy Norris argues that there are no Supreme Court or Tenth Circuit cases clearly establishing that the amount of force used by Deputy Norris in the instant case constitutes a Fourth Amendment violation. (Doc. # 51 at 13–14.) Deputy Norris also posits that the Tenth Circuit has expressly determined that the use of force similar to that used in the instant case is constitutionally permissible. (*Id.* at 14–15 (citing *Cortez*, 478 F.3d at 1126).) Plaintiff responds that there are "questions of fact as to whether it was necessary to grab and violently spin the Plaintiff around, or to pull on her arms while placing her in the car, both of which elicited severe pain in" Plaintiff and whether his use of force resulted in Plaintiff suffering from a torn rotator cuff. (Doc. # 59 at 8.)

The undisputed facts show that the amount of force used by Deputy Norris involved a modest amount of force limited to grabbing Plaintiff's arm, spinning her around, handcuffing her hands behind her back, and placing her into the patrol vehicle. (Doc. # 51-1 at 20, 23.) Moreover, Deputy Norris used this force to arrest Plaintiff on the probable cause that she had committed a felony. (Doc. # 51 at 9; Doc. # 51-1 at 28, ¶¶ 3–5.) In harmony with Supreme Court and Tenth Circuit precedent, Deputy Norris' use of force parallels the amount of force that is permissible to effectuate an arrest under the Fourth Amendment. *See Atwater*, 532 U.S. at 354–55; *Cortez*, 478 F.3d at 1128. At the least, this existing precedent has not placed the question of whether Deputy Norris'

arrest force was constitutionally impermissible beyond debate. *See Aldaba*, 844 F.3d at 877 (quoting *Mullenix*, 136 S. Ct. at 308).

Additionally, although proof of an actual injury is not required to establish an excessive force claim based on arrest force as opposed to handcuffing force, *see Maresca v. Bernalillo County*, 804 F.3d 1301, 1315 (10th Cir. 2015), the absence of an injury in the instant case further buttresses the conclusion that Deputy Norris' conduct was objectively reasonable under the circumstances. To this point, Plaintiff seemingly argues that her shoulder injury itself raises questions of fact as to whether the force that Deputy Norris used to effectuate her arrest was permissible. (Doc. # 59 at 8.) However, Plaintiff proffers no admissible evidence in support of this proposition. To the contrary, as demonstrated above, *supra* pp. 11–12, the evidence indicates that no causal connection exists between Deputy Norris' arrest force and Plaintiff's shoulder injury. (Doc. # 59-2 at 73–74; Doc. # 52 at 1–20; Doc. # 51-1 at 2–5, 39–40.)

Accordingly, because the undisputed material facts demonstrate that Deputy Norris' use of force to arrest Plaintiff was constitutionally permissible under Supreme Court and Tenth Circuit precedent, Deputy Norris is entitled to qualified immunity as to Plaintiff's arrest force claim.

## IV. CONCLUSION

For the foregoing reasons, it is

ORDERED that Defendant Arapahoe County Deputy Sheriff Derrick M. Norris' Motion for Summary Judgment (Doc. # 51) is GRANTED. It is

FURTHER ORDERED that the Clerk of the Court is respectfully DIRECTED to enter a Final Judgment in favor of Defendant Arapahoe County Deputy Sheriff Derrick M. Norris and against Plaintiff Rosemary Strassell.

DATED: April 9, 2020

BY THE COURT:

_____
CHRISTINE M. ARGUELLO
United States District Judge